**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **TASHANDA BURTON** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 08-cv-03844** |
| | ) | |
| **BOARD OF TRUSTEES OF** | ) | **Judge Pallmeyer** |
| **THE UNIVERSITY OF ILLINOIS,** | ) | **Magistrate Judge Schenkier** |
| | ) | |
| **Defendant.** | ) | **Jury Demanded** |

**DEFENDANT'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO DISMISS**

**I.      INTRODUCTION**

Plaintiff has filed a complaint against Defendant, the Board of Trustees of the University of Illinois, for whom she worked from November 2004 until October 2005.  (A copy of the Complaint and First Amended Complaint are attached hereto as Exhibits 1 and 2 respectively.) Plaintiff's method of service -- Federal Express -- was improper.  (*See* Exhibit 3, Return of Service and Exhibits 4 and 5, Federal Express labels.)[1]  Therefore, Plaintiff's complaint should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(5) for lack of personal jurisdiction and insufficiency of service of process or, in the alternative, service should be quashed as federal and state procedural rules require personal service.

**II.      BACKGROUND**

On July 8, 2008, Plaintiff's counsel sent Defendant and its counsel a request for waiver of service.  On August 4, 2008, Defendant's counsel spoke with Plaintiff's counsel and advised him that Federal Rule of Civil Procedure 4(j) precluded Defendant from waiving service.

---

[1]      In making the determination about the sufficiency of service, the court may consider evidence introduced by the parties.  *See Miles v. WTMX Radio Network*, No. 02 C 427, 2002 WL 31369424, *4 (N.D. Ill. Oct. 18, 2002).

On August 6, 2008, Michelle Thompson, Secretary of Board of Trustees, and Caryn Bills, of the Office of Access and Equity, received copies of the Complaint and summons via Federal Express. (Exs. 3 and 4.) On August 11, 2008, the Board of Trustees received a copy of the First Amended Complaint via Federal Express. (Ex. 5.)

### III.    ARGUMENT

When the sufficiency of service is challenged by a defendant, the plaintiff bears the burden of making a *prima facie* showing that service was proper. *See Homer v. Jones-Bey,* 415 F.3d 748**,** 754 (7th Cir. 2005); *Miles v. WTMX Radio Network*, No. 02 C 427, 2002 WL 31369424 at *2 (N.D. Ill Oct. 18, 2002).[2] Plaintiff cannot meet this burden because she did not effect service of process in a manner prescribed by federal or state law. Therefore, the Board of Trustees requests that this Court dismiss the complaint for lack of personal jurisdiction and insufficiency of service of process pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(5), or in the alternative, quash service of process.

Without proper service of process on a defendant, the Court is deprived of personal jurisdiction over that defendant. *See Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987). Mere notice of the lawsuit is not sufficient to establish personal jurisdiction over a defendant. *Id.* Therefore, a court may dismiss a case for insufficient service of process where process was not served in compliance with the law. Fed. R. Civ. P. 12(b)(5); *Bell v. City of Chicago*, No. 03 C 2117, 2004 WL 3119015, * 3 (N.D. Ill. Dec. 20, 2004). In the alternative, a court may quash the service of process. *See Mullen v. Metra Corp.*, No. 05 C 1717, 2005 WL 1950392, *6 (N.D. Ill. Aug. 11, 2005).

Federal Rule of Civil Procedure 4(j)(2) requires personal service. *Miles v. WTMX Radio Network*, No. 02 CV 427, 2002 WL 1359398, *2 (N.D. Ill. June 20, 2002). "Sending the

---

[2]        Copies of all unpublished opinions cited herein are attached hereto as Exhibit 6.

documents by mail will not suffice."  *Id.*  Here, Plaintiff did not personally serve the Board of Trustees.  Instead, she attempted service by mailing the complaint and summons via Federal Express.  (Exs. 3 and 4.)  Accordingly, service was improper.  Therefore, the Court has no personal jurisdiction over the Board of Trustees and Plaintiff's complaint must be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(5), or, in the alternative, service must be quashed as ineffective.

Furthermore, as a state agency, the Board of Trustees may not waive service under Federal Rule of Civil Procedure 4(d).  *Miles*, 2002 WL 1359398 at *3 ("The waiver of service procedure set forth in Rule 4(d)(2) does not apply to governmental entities, who must be served pursuant to the procedures set forth in Rule 4(j)"); *see* Advisory Committee Notes to 1993 Amendment to Rule 4 ("The United States is not expected to waive service for the reason that its mail receiving facilities are inadequate to assure that the notice is actually received by the correct person in the Department of Justice. The same principle is applied to agencies, corporations and officers of the United States and to other governments and entities subject to service under subdivision (j)").

### III.    CONCLUSION

For all of the foregoing reasons, the complaint should be dismissed against Defendant for lack of personal jurisdiction and insufficiency of process, or in the alternative, service of process on the Defendant should be quashed.

Respectfully submitted,


By: _____*s/ Timothy A. Wolfe*_____
        One of the Attorneys for Defendant


Joseph E. Tilson
Timothy A. Wolfe
Meckler Bulger Tilson Marick & Pearson, LLP
123 North Wacker Drive, Suite 1800
Chicago, Illinois  60606
Tel.:  (312) 474-7900
Fax:  (312) 474-7898

M:\12642\pleading\ILND\MOT-Dismiss.01(Memo.Support).doc

**EXHIBIT 1**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

TASHANDA BURTON,
    Plaintiff,

    v.

UNIVERSITY OF ILLINOIS
CHICAGO HOSPITAL,
    Defendant.

Case No.:    FILED: JULY 7, 2008
           08CV3844

Judge:    JUDGE PALLMEYER
           MAGISTRATE JUDGE SCHENKIER

Magistrate Judge:
           JH

### COMPLAINT

Plaintiff, Tashanda Burton ("Plaintiff"), by her undersigned attorney, and for her complaint against Defendant, University of Illinois Chicago Hospital ("Defendant"), states as follows:

### NATURE OF THE CASE

1.    That the cause of action for Plaintiff arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, as amended.

### JURISDICTION AND VENUE

2.    That this court has jurisdiction over this matter pursuant to 42 U.S.C. § 2000e.

3.    That venue in the Northern District of Illinois is proper. The claim for relieve arose in this state as required by 42 U.S.C. § 2000e.

4.    That all conditions precedent have been fulfilled by Plaintiff, including the

filing of a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") of the United States Government, and a receipt of a Right-to-Sue Letter from the EEOC. (EEOC Charge No. 210-2006-00570 amended and Right-to-Sue Letter dated May 13, 2008 attached as Exhibit A).

## PARTIES

5.    That Plaintiff is female and a resident of the State of Illinois.

6.    That Defendant is duly registered to conduct business in the State of Illinois.

7.    That at all times pertinent hereto, Defendant has engaged in an industry affecting commerce and has had fifteen or more employees for each working day in each of the twenty or more calendar weeks in the current or preceding calendar year.

## COUNT I
## COMPLAINT OF TASHANDA BURTON FOR
## SEXUAL HARASSMENT

8.    That Plaintiff incorporates the preceding paragraphs by reference here.

9.    That Plaintiff became employed by Defendant on or about November 11, 2004 in the position of Dietary Aide.

10.    That at all times relevant herein, LaShon Tanksley ("Tanksley") was

-2-

employed by Defendant as a Supervisor.

11.    That at all times relevant herein, Andre Washington ("Washington") was employed by Defendant as a Dietary Aide.

12.    That at all time relevant herein, Robert Staples ("Staples") was employed by Defendant as a Dietary Aide.

13.    That at all times relevant herein, Manuel Stephen ("Stephen") was employed by Defendant as a Dietary Aide.

14.    That during Plaintiff's employment with Defendant, she was supervised by Tanksley.

15.    That from approximately November 2004 and continuing until her termination on or around October 23, 2005, Plaintiff was subjected to persistent and debilitating sexual harassment by Tanksley.

16.    That on approximately September 12, 2005, Tanksley requested for Plaintiff to hug him by saying, "Come give Big Daddy a hug."  Tanksley grabbed Plaintiff's buttocks as she walked by.

17.    That in December 2004, Tanksley attempted to pull down Plaintiff's pants

-3-

asking, "What color panties do you have on?  What kind are they?"

18.    That in August 2005, Tanksley cornered Plaintiff in a supply room and tried to kiss her on the lips.  Tanksley grabbed Plaintiff's face.  At this point, Plaintiff turned away and Tanksley forcefully kissed her on the cheek.

19.    That throughout Plaintiff's period of employment with Defendant, Tanksley would request that she call him "Big Daddy."

20.    That about every other month Tanksley would ask Plaintiff, "Do you have a boyfriend?"

21.    That from approximately September 2005 and continuing until her termination on or around October 23, 2005, Plaintiff was subjected to persistent and debilitating sexual harassment by Washington, Staples, and Stephen.

22.    That throughout this period, Plaintiff was subjected to numerous instances of inappropriate touching and comments from Washington.

23.    That on approximately September 9, 2005, Washington slapped Plaintiff's buttocks as she was getting of the elevator, the same occurred again two days later.

24.    That Plaintiff told Washington she did not appreciate his behavior and

-4-

requested he stop.

25.    That Washington asked Plaintiff "Do you have a boyfriend?" approximately ten times .

26.    That on approximately September 30, 2005, Washington said to Plaintiff, "What's your phone number, because I'll give you $100 if you have sex with me." At this point, Plaintiff walked away.

27.    That Washington said to Plaintiff, "I will pay you $50 to have sex with me. You can't get pregnant because you already are pregnant."

28.    That on approximately October 3, 2005, Washington asked Plaintiff, "What color bra do you have on?"

29.    That throughout this period, Plaintiff was subjected to numerous instances of inappropriate touching and comments from Staples.

30.    That on approximately September 11, 2005, Staples whispered into Plaintiff's ear, "I'm enjoying the view of your behind. Make it clap for me."

31.    That Staples asked Plaintiff if she had a boyfriend approximately two times.

32.     That during Plaintiff's employment with Defendant, Plaintiff was subjected to numerous instances of inappropriate comments by Stephen.

33.     That on one occasion, Stephen said to Plaintiff, "You've got some big hips and I can see why your having a baby with them hips."

34.     That in or around June or July of 2005, Plaintiff complained to Defendant's employee Ezella Pearson-Wheeler ("Pearson"), Nutritional Service Supervisor.  Pearson asked, "If you are claiming they are harassing you, how come nobody else has said anything about it?"  Pearson told Plaintiff not to quit and added, "Just try to stay away from them and eventually they will leave you alone."

35.     That Pearson took no action on Plaintiff's behalf.

36.     That on approximately September 9, 2005, Plaintiff complained to Defendant's employee Karen Biels ("Biels") from Defendant's department of Access and Equity.

37.     That Biels told Plaintiff she would document the complaint and find a way to handle it.

38.     That in late September 2005, Plaintiff asked Biels if she could receive counseling for the sexual harassment.  Burton was told she could not receive counseling

-6-

seeing that she was not a full-time employee.

39.    That Plaintiff also complained to Pat Henry ("Henry"), the Day Shift Supervisor, about the comments Tanksley was making towards her.  Henry smiled, replied "Oh please," and walked away.

40.    That Defendant's response to Plaintiff's complaints of harassment is negligent in that it left Plaintiff materially worse off than she would have been had she not complained.

41.    That Defendant could have prevented said sexual harassment if it implemented an effective anti-sexual harassment policy.

42.    That Defendant condoned sexual harassment and failed to maintain a harassment-free work environment by failing to provide adequate training, counseling, and instructions to their employees and officers, especially Tanksley, Washington, Staples, and Stephen.

43.    That Defendant failed to maintain a harassment-free work environment by failing to take effective corrective action against Tanksley, Washington, Staples, and Stephen after Defendant became aware that said employees were making unwelcome sexual advances and comments toward Plaintiff.

-7-

44.    That as a result of these failures by Defendant, Tanksley, Washington, Staples, and Stephen continued to force their unwelcome sexual advances and offensive conduct upon Plaintiff.

45.    That Defendant's treatment of Plaintiff was motivated by evil motive and intent, and was recklessly and callously indifferent to Plaintiff's federally protected rights.

46.    That the sexual harassment that Plaintiff was subjected to by the hands of the Defendant, its agents, representatives, and employees was persistent in nature, unwelcome, extremely offensive, humiliating, and effective in creating a hostile and intimidating work environment for Plaintiff.

47.    That said continuous and persistent sexual harassment adversely affected the terms and conditions of Plaintiff's employment with Defendant.

48.    That as a direct and proximate result of said unlawful employment practices and disregard for Plaintiff's rights and sensibilities, Plaintiff has lost and will continue to lose substantial income, including, but not limited to, wages, fringes, pension, seniority benefits, and other employment benefits.

49.    That as a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered the indignity of discrimination, the invasion of her right to be free from discrimination, and great humiliation which is manifest in physical illness and

-8-

emotional stress on the relationship between Plaintiff and her friends, family and colleagues.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Burton, respectfully requests this Court to provide the following equitable and legal remedies:

a.    Advance this case on the docket, order a speedy hearing at the earliest practicable date and cause this case to be expedited in every possible way.

b.    Order a permanent injunction prohibiting Defendant from further acts of sex discrimination and sexual harassment.

c.    Award Plaintiff, Burton, costs of litigation, including reasonable attorneys' fees and expert fees and expenses.

d.    Award Plaintiff, Burton, a judgment against Defendant for reinstatement, front pay, back pay and other compensatory damages.

e.    Award Plaintiff, Burton, prejudgment interest.

f.    Grant judgment against Defendant for punitive damages for willful and wanton conduct.

g.    Enter an order requiring Defendant to implement effective steps to eliminate sex discrimination and sexual harassment from Defendant's organizations.

h.    Grant such other and further relief as this court deems just and proper.

## COUNT II
## COMPLAINT OF TASHANDA BURTON
## OF RETALIATION

50.    Plaintiff incorporates the preceding paragraphs by reference here.

51.    That shortly after Plaintiff complained  to Pearson, Pearson stated that the Defendant did not have any full-time positions available and that Plaintiff would be temporarily laid-off.

52.    That despite Pearson's statement that there were no full-time positions available, two other temporary employees, Cutron Ballard and Tiffany (Last Name Unknown), were hired full-time.

53.    That an inference of retaliatory motivation is created by the adverse action of the Plaintiff being laid off within such a short period of time since she engaged in a protected activity.

54.    That Defendant's conduct in laying off Plaintiff amounts to retaliation in violation of the law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Burton, respectfully requests this Court to provide the following equitable and legal remedies:

a.    Advance this case on the docket, order a speedy hearing at the earliest practicable date and cause this case to be expedited in every possible way.

b.    Order a permanent injunction prohibiting Defendant from further acts of sex discrimination and sexual harassment.

c.    Award Plaintiff, Burton, costs of litigation, including reasonable attorneys'

-10-

fees and expert fees and expenses.

d.      Award Plaintiff, Burton, a judgment against Defendant for reinstatement,
        front pay, back pay and other compensatory damages.

e.      Award Plaintiff, Burton, prejudgment interest.

f.      Grant judgment against Defendant for punitive damages for willful and
        wanton conduct.

g.      Enter an order requiring Defendant to implement effective steps to eliminate
        sex discrimination and sexual harassment from Defendant's organizations.

h.      Grant such other and further relief as this court deems just and proper.


                            Respectfully Submitted,
                            Tashanda Burton


                            By:_____s/ Mark Pando_____
                                  One of Her Attorneys


Uche O. Asonye - 6209522
Mark Pando - 6283693
Asonye & Associates
11 South LaSalle Street, Suite 2140
Chicago, Illinois 60603
(312) 795-9110
(312) 795-9114 (Fax)

## **JURY DEMAND**

NOW COMES the Plaintiff, Tashanda Burton, by her undersigned attorney, and demands a trial by jury in the above entitled cause of action.

Respectfully Submitted,
Tashanda Burton

By:    s/ Mark Pando
       One of Her Attorneys

Uche O. Asonye - 6209522
Mark Pando - 6283693
Asonye & Associates
11 South LaSalle Street, Suite 2140
Chicago, Illinois 60603
(312) 795-9110
(312) 795-9114 (Fax)

-12-

08CV3844
JUDGE PALLMEYER
MAGISTRATE JUDGE SCHENKIER
JH

# EXHIBIT A



**U.S. Departme.__,of Justice**

Civil Rights Division
NOTICE OF RIGHT TO SUE
WITHIN 90 DAYS

CERTIFIED MAIL
5069 1592

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson, EMP, PHB, Room 4239*
*Washington, DC 20530*

May 13, 2008

Ms. Tashanda Burton
c/o Mark Pando, Esquire
Law Offices of Asonye & Associates
Attorney at Law
11 South LaSalle St., Ste.2140
Chicago, IL  60603

Re:  EEOC Charge Against University of Illinois-Chicago Hospital
     No. 210200600570

Dear Ms. Burton:

     Because you filed the above charge with the Equal Employment
Opportunity Commission, and more than 180 days have elapsed since
the date the Commission assumed jurisdiction over the charge, and no
suit based thereon has been filed by this Department, and because
you through your attorney have specifically requested this Notice,
you are hereby notified that you have the right to institute a civil
action under Title VII of the Civil Rights Act of 1964, as amended,
42 U.S.C. 2000e, et seq., against the above-named respondent.

     If you choose to commence a civil action, such suit must be
filed in the appropriate Court within 90 days of your receipt of
this Notice.

     This Notice should not be taken to mean that the Department of
Justice has made a judgment as to whether or not your case is
meritorious.

                              Sincerely,

                              Grace Chung Becker
                         Acting Assistant Attorney General
                              Civil Rights Division

                    by      Karen J. Ferguson
                              Karen L. Ferguson
                         Supervisory Civil Rights Analyst
                         Employment Litigation Section

cc:  Chicago District Office, EEOC
     University of Illinois-Chicago Hospital

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | **AMENDED**<br>**210-2006-00570** |

| **Illinois Department Of Human Rights** | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (indicate Mr., Ms., Mrs.)<br>**Tashanda Burton** | Home Phone (Incl. Area Code)<br>**(773) 785-1257** | Date of Birth |
|---|---|---|

| Street Address<br>**4708 West Washington Blvd., #2W, Chicago, IL  60644** | City, State and ZIP Code |
|---|---|

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name<br>**UNIVERSITY OF ILLINOIS-CHICAGO HOSPITAL** | No. Employees, Members<br>**500 or More** | Phone No. (Include Area Code)<br>**(312) 996-0660** |
|---|---|---|

| Street Address<br>**1740 W. Taylor Street,  Chicago, IL 60612** | City, State and ZIP Code |
|---|---|

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|

| Street Address | City, State and ZIP Code |
|---|---|

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☐ RACE    ☐ COLOR    ☒ SEX    ☐ RELIGION    ☐ NATIONAL ORIGIN<br>☒ RETALIATION    ☐ AGE    ☐ DISABILITY    ☐ OTHER (Specify below.) | Earliest **11-07-2004**    Latest **10-23-2005**<br>☐ CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I was hired by the above named Respondent as a Dietary Aide on November 7, 2004. From the beginning of my employment until October 14, 2005, I was subjected to verbal and physical sexual harassment. Despite multiple complaints to management inside and outside of my department, the harassment continued. On or around October 23, 2005, I was effectively laid off from my position and was not hired into an available fulltime position.

I believe that I have been discriminated against because of my sex, female and retaliated against for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended.

OFFICIAL SEAL
MONICA CHOWANIEC
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:07/18/09

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements<br><br>*Monica Chowaniec* |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br><br>x ___6.7.07___  _Tashanda Burton_<br>Date          Charging Party Signature | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year)<br>06/07/2007 |

# CHARGE OF DISCRIMINATION

|  | CHARGE NUMBER |
|---|---|
| This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form. | ☐ FEPA  ☒ EEOC |

| Illinois Department of Human Rights | and EEOC |
|---|---|
| State or local Agency, if any | |

| NAME(Indicate Mr., Ms., Mrs.) | HOME TELEPHONE (Include Area Code) |
|---|---|
| Ms. Tashanda Burton | (773) 785-1257 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 4708 West Washington Boulevard | Chicago, IL 60644 | |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE (Include Area Code) |
|---|---|---|
| University of Illinois-Chicago Hospitals | 500 or More | (312) 996-0660 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 1740 West Taylor Street | Chicago, IL 60612 | Cook |

| NAME | TELEPHONE NUMBER (Include Area Code) |
|---|---|
| | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| | | |

CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es))

☐ RACE   ☐ COLOR   ☒ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN
☒ RETALIATION   ☐ AGE   ☐ DISABILITY   ☐ OTHER (Specify)

| DATE DISCRIMINATION TOOK PLACE EARLIEST / LATEST |
|---|
| 11-07-2004      October 2005 |
| ☐ CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I was hired by the above named Respondent as a Dietary Aide on November 7, 2004. From the beginning of my employment until October 14, 2005, I was subjected to verbal and physical sexual harassment. Despite multiple complaints to management inside and outside of my department, the harassment continued.

I believe that I have been discriminated against because of my sex, female, in violation of Title VII of the Civil Rights Act of 1964, as amended. I also believe that I was retaliated against for complaining about sexual harassment.

DEPT. OF HUMAN RIGHTS
INTAKE UNIT

FEB 07 2006

RECEIVED
BY

OFFICIAL SEAL
MONICA CHOWANIEC
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:07/18/09

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary for State and Local Requirements) _Monica Chowaniec_ |
|---|---|
| I declare under penalty of perjury that the foregoing is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| 2/7/06 _Tashanda Burton_ | SIGNATURE OF COMPLAINANT _Tashanda Burton_ |
| Date       Charging Party (Signature) | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, month, and year) 7th day of February 2006 |

EEOC FORM 5 (REV. 3/01)

## TASHANDA BURTON V. UNIVERSITY OF ILLINOIS-CHICAGO HOSPITALS
**Page 2 of charge:**

I.    A.    ISSUE/BASIS

           1.    Sexually harassed from approximately November 2004 and continuing until October 2005.

    B.    PRIMA FACIE ALLEGATIONS

           1.    I was hired by Respondent as a Dietary Aide on or about November 7, 2004. During my employment with Respondent, I was discriminated against because of my sex, female. I was also subjected to sexual harassment by my supervisor, Lashawn Tanksley ("TANKSLEY"), co-worker Andre Washington ("WASHINGTON"), co-worker Robert Staples ("STAPLES"), and co-worker Manuel Stephens ("STEPHENS"). Respondent has failed to take effective corrective action and failed to prevent the sexual harassment.

           2.    I believe that I have been discriminated against because of my sex, female, and sexually harassed in that:

               a.    I was a satisfactory and conscientious employee.

               b.    Starting in approximately November of 2004, I was subjected to persistent sexual harassment by TANKSLEY. TANKSLEY subjected me to numerous instances of inappropriate touching and comments.

               c.    For example, on September 12, 2005, TANKSLEY said, "Come give Big Daddy a hug." TANKSLEY then grabbed my buttocks as I walked by. I told TANKSLEY not to touch me.

               d.    Also in December 2004, TANKSLEY attempted to pull down my pants and asked, "What color panties do you have on? What kind are they?"

_Todd Burton_  
Complainant's Signature

_2/7/06_  
Date

## TASHANDA BURTON V. UNIVERSITY OF ILLINOIS-CHICAGO HOSPITALS
**Page 3 of charge:**

e.  On another occasion, in or around August 2005, TANKSLEY cornered me in the cleaning supplies room and tried to kiss me on the lips. He grabbed me by my face. I turned away and he kissed me on my cheek.

f.  TANKSLEY routinely also asked me to call him "Big Daddy".

g.  Starting in approximately September of 2005, I was subjected to persistent sexual harassment by WASHINGTON. WASHINGTON subjected me to numerous instances of inappropriate touching and comments.

h.  For example, on September 9, 2005, WASHINGTON slapped me on my buttocks as I was getting off of the elevator. I told him that I did not appreciate that and asked him not to do it again. Approximately two days later, WASHINGTON slapped me in my buttocks again. Again, I told him to stop.

i.  On September 30, 2005, WASHINGTON said to me, "What's your phone number, because I'll give you $100 if you have sex with me." I immediately walked away from him.

j.  On or about October 3, 2005. On this occasion WASHINGTON also asked me, "What color bra do you have on?"

_____     2/7/06
Complainant's Signature                           Date

**TASHANDA BURTON V. UNIVERSITY OF ILLINOIS-CHICAGO HOSPITALS**
**Page 4 of charge:**

k.    Starting in approximately September of 2005, I was subjected to persistent sexual harassment by ROBERT STAPLES. STAPLES subjected me to numerous instances of inappropriate touching and comments. On or around September 11, 2005 as I was bending over, STAPLES whispered into my ear, "I'm enjoying the view of your behind. Make it clap for me."

l.    I was also subjected to persistent sexual harassment by MANUEL STEPHENS. For example, on one occasion STEPHENS said to me, "You've got some big hips and I can see why your having a baby with them hips."

m.    In or around June or July of 2005, I complained to Ms. Pearson. Ms. Pearson took me into her office and told me to try to stay away from these people. Ms. Pearson said, if you are claiming they are harassing you, how come nobody else has said anything about it?" She further said, "Just try to stay away from them and eventually they will leave you alone." I told her that I wanted to quit. Ms. Pearson said, "Don't quit, you need to work." Ms. Pearson talked me out of quitting.

n.    On or around September 9, 2005, I went to Karen Biels' office to complain about sexual harassment. After I complained, Ms. Beils told me that she would to put this on file and find a way to handle it.

o.    In late September 2005, I asked Ms. Biels if I could receive counseling to help me deal with the situation. Ms. Biels stated that I could not receive counseling because I was not a full-time employee.

Complainant's Signature                    2/7/06
                                            Date

**TASHANDA BURTON V. UNIVERSITY OF ILLINOIS-CHICAGO HOSPITALS**
**Page 5 of charge:**

    p. Despite my complaints to Ms. Bills and Ms. Pearson, the sexual harassment continued.

II. A. **ISSUE/BASIS**
   1. Retaliation

  B. **PRIMA FACIE ALLEGATIONS**
   1. I believe that I was retaliated against for complaining about sexual harassment.

    a. Shortly after I complained to Ms. Pearson, she stated that Respondent did not have any full-time positions available and that I was going to be temporarily layed-off. Before I left, Ms. Pearson communicated to me that I would be hired back shortly.

    b. Despite Ms. Pearson's statement that there were no full-time positions available, another temporary employee, Cutron Ballard, was hired full-time.

    c. The adverse actions of failing to hire me full-time and in laying me off, followed my protected activity within such a period of time as to raise an inference of retaliatory motivation.

_____  2/7/06
Complainant's Signature   Date

Subscribed and sworn to before me this

____7th____ day of ~~January,~~ February 2006.

_____
Notary Public

OFFICIAL SEAL
MONICA CHOWANIEC
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:07/18/09

**EXHIBIT 2**

**RECEIVED**

**AUG 1 1 2008**

**OFFICE OF THE SECRETARY**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| TASHANDA BURTON, | ) | |
| Plaintiff, | ) | Case No.: 08-CV-3844 |
| | ) | |
| v. | ) | Judge: Rebecca R. Pallmeyer |
| | ) | |
| BOARD OF TRUSTEES OF | ) | Magistrate Judge: Sidney I. Schenkier |
| THE UNIVERSITY OF ILLINOIS, | ) | |
| Defendant. | ) | |

### FIRST AMENDED COMPLAINT

Plaintiff, Tashanda Burton ("Plaintiff"), by her undersigned attorney, and for her first amended complaint against Defendant, Board of Trustees of the University of Illinois, states as follows:

### NATURE OF THE CASE

1.     That the cause of action for Plaintiff arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, as amended.

### JURISDICTION AND VENUE

2.     That this court has jurisdiction over this matter pursuant to 42 U.S.C. § 2000e.

3.     That venue in the Northern District of Illinois is proper.  The claim for relief arose in this state as required by 42 U.S.C. § 2000e.

4.     That all conditions precedent have been fulfilled by Plaintiff, including the filing of

a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") of the

United States Government, and a receipt of a Right-to-Sue Letter from the EEOC. (EEOC Charge

No. 210-2006-00570 amended and Right-to-Sue Letter dated May 13, 2008 attached as Exhibit A).

## PARTIES

5.    That Plaintiff is female and a resident of the State of Illinois.

6.    That Defendant, Board of Trustees, maintains and controls a public university, the

University of Illinois at Chicago, located in Chicago, Illinois.

7.    The University of Illinois at Chicago is a comprehensive public university and major

medical center.  It is one of three campuses known as the University of Illinois, all governed by the

Board of Trustees.

8.    That at all times pertinent hereto, Defendant has engaged in an industry affecting

commerce and has had fifteen or more employees for each working day in each of the twenty or more

calendar weeks in the current or preceding calendar year.

## COUNT I
## COMPLAINT OF TASHANDA BURTON FOR
## SEXUAL HARASSMENT

9.    That Plaintiff incorporates the preceding paragraphs by reference here.

-2-

10.    That Plaintiff became employed by Defendant on or about November 11, 2004 in the position of Dietary Aide at the University of Illinois at Chicago medical center.

11.    That at all times relevant herein, LaShon Tanksley ("Tanksley") was employed by Defendant as a Supervisor.

12.    That at all times relevant herein, Andre Washington ("Washington") was employed by Defendant as a Dietary Aide.

13.    That at all time relevant herein, Robert Staples ("Staples") was employed by Defendant as a Dietary Aide.

14.    That at all times relevant herein, Stephen Manuel ("Manuel") was employed by Defendant as a Dietary Aide.

15.    That during Plaintiff's employment with Defendant, she was supervised by Tanksley.

16.    That from approximately November 2004 and continuing until her termination on or around October 23, 2005, Plaintiff was subjected to persistent and debilitating sexual harassment by Tanksley.

17.    That on approximately September 12, 2005, Tanksley requested for Plaintiff to hug

-3-

him by saying, "Come give Big Daddy a hug." Tanksley grabbed Plaintiff's buttocks as she walked by.

18.     That in December 2004, Tanksley attempted to pull down Plaintiff's pants asking, "What color panties do you have on?  What kind are they?"

19.     That in August 2005, Tanksley cornered Plaintiff in a supply room and tried to kiss her on the lips.  Tanksley grabbed Plaintiff's face.  At this point, Plaintiff turned away and Tanksley forcefully kissed her on the cheek.

20.     That throughout Plaintiff's period of employment with Defendant, Tanksley would request that she call him "Big Daddy."

21.     That about every other month Tanksley would ask Plaintiff, "Do you have a boyfriend?"

22.     That from approximately September 2005 and continuing until her termination on or around October 23, 2005, Plaintiff was subjected to persistent and debilitating sexual harassment by Washington, Staples, and Manuel.

23.     That throughout this period, Plaintiff was subjected to numerous instances of inappropriate touching and comments from Washington.

-4-

24.    That on approximately September 9, 2005, Washington slapped Plaintiff's buttocks as she was getting of the elevator, the same occurred again two days later.

25.    That Plaintiff told Washington she did not appreciate his behavior and requested he stop.

26.    That Washington asked Plaintiff "Do you have a boyfriend?" approximately ten times.

27.    That on approximately September 30, 2005, Washington said to Plaintiff, "What's your phone number, because I'll give you $100 if you have sex with me." At this point, Plaintiff walked away.

28.    That Washington said to Plaintiff, "I will pay you $50 to have sex with me. You can't get pregnant because you already are pregnant."

29.    That on approximately October 3, 2005, Washington asked Plaintiff, "What color bra do you have on?"

30.    That throughout this period, Plaintiff was subjected to numerous instances of inappropriate touching and comments from Staples.

31.    That on approximately September 11, 2005, Staples whispered into Plaintiff's ear, "I'm enjoying the view of your behind. Make it clap for me."

32.    That Staples asked Plaintiff if she had a boyfriend approximately two times.

33.    That during Plaintiff's employment with Defendant, Plaintiff was subjected to numerous instances of inappropriate comments by Manuel.

34.    That on one occasion, Manuel said to Plaintiff, "You've got some big hips and I can see why your having a baby with them hips."

35.    That in or around June or July of 2005, Plaintiff complained to Defendant's employee Ezella Pearson-Wheeler ("Pearson"), Nutritional Service Supervisor. Pearson asked, "If you are claiming they are harassing you, how come nobody else has said anything about it?" Pearson told Plaintiff not to quit and added, "Just try to stay away from them and eventually they will leave you alone."

36.    That Pearson took no action on Plaintiff's behalf.

37.    That on approximately September 9, 2005, Plaintiff complained to Defendant's employee Caryn Bills ("Bills") from Defendant's department of Access and Equity.

-6-

38.    That Bills told Plaintiff she would document the complaint and find a way to handle it.

39.    That in late September 2005, Plaintiff asked Bills if she could receive counseling for the sexual harassment. Burton was told she could not receive counseling seeing that she was not a full-time employee.

40.    That Plaintiff also complained to Pat Henry ("Henry"), the Day Shift Supervisor, about the comments Tanksley was making towards her. Henry smiled, replied "Oh please," and walked away.

41.    That Defendant's response to Plaintiff's complaints of harassment is negligent in that it left Plaintiff materially worse off than she would have been had she not complained.

42.    That Defendant could have prevented said sexual harassment if it implemented an effective anti-sexual harassment policy.

43.    That Defendant condoned sexual harassment and failed to maintain a harassment-free work environment by failing to provide adequate training, counseling, and instructions to their employees and officers, especially Tanksley, Washington, Staples, and Manuel.

44.    That Defendant failed to maintain a harassment-free work environment by failing to

-7-

Case 1:08-cv-03844    Document 8    Filed 08/08/2008    Page 8 of 13

take effective corrective action against Tanksley, Washington, Staples, and Manuel after Defendant became aware that said employees were making unwelcome sexual advances and comments toward Plaintiff.

45.     That as a result of these failures by Defendant, Tanksley, Washington, Staples, and Manuel continued to force their unwelcome sexual advances and offensive conduct upon Plaintiff.

46.     That Defendant's treatment of Plaintiff was motivated by evil motive and intent, and was recklessly and callously indifferent to Plaintiff's federally protected rights.

47.     That the sexual harassment that Plaintiff was subjected to by the hands of the Defendant, its agents, representatives, and employees was persistent in nature, unwelcome, extremely offensive, humiliating, and effective in creating a hostile and intimidating work environment for Plaintiff.

48.     That said continuous and persistent sexual harassment adversely affected the terms and conditions of Plaintiff's employment with Defendant.

49.     That as a direct and proximate result of said unlawful employment practices and disregard for Plaintiff's rights and sensibilities, Plaintiff has lost and will continue to lose substantial income, including, but not limited to, wages, fringes, pension, seniority benefits, and other employment benefits.

-8-

50.     That as a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered the indignity of discrimination, the invasion of her right to be free from discrimination, and great humiliation which is manifest in physical illness and emotional stress on the relationship between Plaintiff and her friends, family and colleagues.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court to provide the following equitable and legal remedies:

a.     Advance this case on the docket, order a speedy hearing at the earliest practicable date and cause this case to be expedited in every possible way.

b.     Order a permanent injunction prohibiting Defendant from further acts of sex discrimination and sexual harassment.

c.     Award Plaintiff costs of litigation, including reasonable attorneys' fees and expert fees and expenses.

d.     Award Plaintiff a judgment against Defendant for reinstatement, front pay, back pay and other compensatory damages.

e.     Award Plaintiff prejudgment interest.

f.     Grant judgment against Defendant for punitive damages for willful and wanton conduct.

g.     Enter an order requiring Defendant to implement effective steps to eliminate sex discrimination and sexual harassment from Defendant's organizations.

h.     Grant such other and further relief as this court deems just and proper.

## COUNT II
## COMPLAINT OF TASHANDA BURTON
## OF RETALIATION

51.    Plaintiff incorporates the preceding paragraphs by reference here.


52.    That shortly after Plaintiff complained to Pearson, Pearson stated that the Defendant

did not have any full-time positions available and that Plaintiff would be temporarily laid-off.


53.    That despite Pearson's statement that there were no full-time positions available, two

other temporary employees, Cutron Ballard and Tiffany Williams, were hired full-time.


54.    That an inference of retaliatory motivation is created by the adverse action of the

Plaintiff being laid off within such a short period of time since she engaged in a protected activity.


55.    That Defendant's conduct in laying off Plaintiff amounts to retaliation in violation

of the law.


## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court to provide the following equitable

and legal remedies:

a.    Advance this case on the docket, order a speedy hearing at the earliest practicable
date and cause this case to be expedited in every possible way.

b.    Order a permanent injunction prohibiting Defendant from further acts of sex

discrimination and sexual harassment.

c.    Award Plaintiff costs of litigation, including reasonable attorneys' fees and expert fees and expenses.

d.    Award Plaintiff a judgment against Defendant for reinstatement, front pay, back pay and other compensatory damages.

e.    Award Plaintiff prejudgment interest.

f.    Grant judgment against Defendant for punitive damages for willful and wanton conduct.

g.    Enter an order requiring Defendant to implement effective steps to eliminate sex discrimination and sexual harassment from Defendant's organizations.

h.    Grant such other and further relief as this court deems just and proper.

Respectfully Submitted,
Tashanda Burton,


<u>s/Mark Pando</u>
One of Her Attorneys


Uche O. Asonye - 6209522
Mark Pando - 6283693
Scott Fanning - 6292790
Asonye & Associates
11 South LaSalle Street, Suite 2140
Chicago, Illinois 60603
(312) 795-9110
(312) 795-9114 (Fax)

## JURY DEMAND

NOW COMES the Plaintiff, Tashanda Burton, by her undersigned attorney, and demands a trial by jury in the above entitled cause of action.

Respectfully Submitted,
Tashanda Burton,

 s/Mark Pando
One of Her Attorneys

Uche O. Asonye - 6209522
Mark Pando - 6283693
Scott Fanning - 6292790
Asonye & Associates
11 South LaSalle Street, Suite 2140
Chicago, Illinois 60603
(312) 795-9110
(312) 795-9114 (Fax)

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that he caused the following *First Amended Complaint* to be served on the following person at her respective address, listed below, on August 8, 2008:

Secretary of the Board of Trustees
Michelle Thompson
506 South Wright Street
Room 352 Henry Administration Building
Urbana, Illinois 61801

Respectfully Submitted,
Tashanda Burton,


 s/Mark Pando
One of Complainant's Attorneys


Uche O. Asonye - 6209522
Mark Pando - 6283693
Scott Fanning - 6292790
Asonye & Associates
11 South LaSalle Street, Suite 2140
Chicago, Illinois 60603
312.795.9110

-13-

**EXHIBIT 3**

AO 440 (Rev. 05/00) Summons in a Civil Action

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | August 4, 2008 |
| NAME OF SERVER *(PRINT)*<br>Lauren Rafferty | TITLE<br>Law Clerk |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served: _____

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

    Name of person with whom the summons and complaint were left: _____

☐ Returned unexecuted: _____

☒ Other (specify):  Fedex Ground _____

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

## DECLARATION OF SERVER

    I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on  8/1/08
         *Date*            *Signature of Server*

          11 South Lasalle, Chicago, IL 60603
          *Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

**EXHIBIT 4**

From:    (312) 795-9110
Lauren Rafferty
ASONYE ASSOCIATES
11 S. LaSalle
Suite 2140
Chicago, IL



JCLS9864480/14/23

Ship Date: 04AUG08
ActWgt: 1.0 LB
System#: 855785Q/INET8061
Account#: S *********

**RECEIVED**

Invoice #
Reference #    Burton
PO #
Dept # 9          Ship ID

AUG 0 6 2008

OFFICE FOR ACCESS AND EQUITY
University of Illinois at Chicago

SHIP TO:    (312) 795-9110
**Caryn A. Bills**
**Univ. of Illinois Chicago Hosp.**
**809 South Marshfield Avenue**

**Chicago, IL 60603**





(9612015) 8015961 10000883

**GND**      **015**                    1
Prepaid      DIRECT SIGN       of
                                            1



**After printing this label:**
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning:** IMPORTANT: TRANSMIT YOUR SHIPPING DATA AND PRINT A MANIFEST:
At the end of each shipping day, you should perform the FedEx Ground End of Day Close procedure to transmit your shipping data to FedEx. To do so, click on the Ground End of Day Close Button. If required, print the pickup manifest that appears. A printed manifest is required to be tendered along with your packages if they are being picked up by FedEx Ground. If you are dropping your packages off at a FedEx drop off location, the manifest is not required.

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide and applicable tariff, available upon request. FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations, including limitations on our liability, can be found in the current FedEx Service Guide and applicable tariff apply. In no event shall FedEx Ground be liable for any special, incidental, or consequential damages, including, without limitation, loss of profit, loss to the intrinsic value of the package, loss of sale, interest income or attorney's fees. Recovery cannot exceed actual documented loss. Items of extraordinary value are subject to separate limitations of liability set forth in the Service Guide and tariff. Written claims must be filed within strict time limits, see current FedEx Service Guide.

**EXHIBIT 5**



From: (312) 795-9110
Kathleen Przywara
ASONVE ASSOCIATES
11 S. LaSalle
Suite 2140
Chicago, Ill.

SHIP TO: (312) 795-9110
Secretary of the Board of Trustees
Michelle Thompson
506 S WRIGHT ST
ROOM 352 HENRY ADMINISTRATION BUILD
URBANA, IL 61801

FedEx Ground

Ship Date: 08AUG08
ActWgt: 1.0 LB
System#: 8857850/NET8061
Account#: S ********

Invoice #
Reference #    Burton-Amended Complaint
PO #
Dept # emp    Ship ID

GND
(9612019) 8015961 10000920
019
Prepaid    1 of 1

Page 1 of 1

**EXHIBIT 6**

Not Reported in F.Supp.2d                                          Page 1
Not Reported in F.Supp.2d, 2002 WL 31369424 (N.D.Ill.)

H

Miles v. WTMX Radio Network
N.D.Ill.,2002.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois, Eastern
Division.
Gregory MILES, Plaintiff,
v.
WTMX RADIO NETWORK, Dave Fogel, Boogie
Night Club, Cermak Medical Center, Chicago Po-
lice Department, and Cook County Jail, Defend-
ants.
**No. 02 C 0427.**

Oct. 18, 2002.

Pro se litigant brought action against radio station,
disc jockey, night club, county jail, and hospital, al-
leging defamation, assault, battery, racial discrimin-
ation, and violations of civil rights. Defendants
moved to dismiss for lack of service. The District
Court, St.Eve, J., held that litigant failed to show
that he effected proper service on any defendants,
after being granted extension of time for service,
warranting dismissal of lawsuit.

Motion granted.

West Headnotes

**[1] Federal Civil Procedure 170A ⚖ 1751**

170A Federal Civil Procedure
    170AXI Dismissal
        170AXI(B) Involuntary Dismissal
            170AXI(B)2 Grounds in General
                170Ak1751 k. Process, Defects In.
Most Cited Cases
Pro se plaintiff failed to show that he effected prop-
er service on individual defendant, after being gran-
ted extension of time for service, warranting dis-
missal of lawsuit, where individual defendant
denied that he was personally served or that sum-
mons and complaint were left with anyone at his
residence or workplace, return of service indicated

that receptionist at defendant's workplace accepted
service for defendant, defendant denied that anyone
was authorized to receive service on his behalf, and
plaintiff was unable to provide any details about in-
dividual who purportedly served defendant.
Fed.Rules Civ.Proc.Rule 4(e)(2), 28 U.S.C.A.

**[2] Federal Civil Procedure 170A ⚖ 1751**

170A Federal Civil Procedure
    170AXI Dismissal
        170AXI(B) Involuntary Dismissal
            170AXI(B)2 Grounds in General
                170Ak1751 k. Process, Defects In.
Most Cited Cases
Pro se plaintiff failed to show that he effected prop-
er service on corporate defendant, after being gran-
ted extension of time for service, warranting dis-
missal of lawsuit, where return of service indicated
that summons and complaint were left with recep-
tionist at corporate office, corporation manager
stated that receptionist lacked authority to receive
service on behalf of corporation, and corporate de-
fendant denied that anyone with authority received
service on behalf of corporate defendant. Fed.Rules
Civ.Proc.Rule 4(h)(1), 28 U.S.C.A.

**[3] Federal Civil Procedure 170A ⚖ 1751**

170A Federal Civil Procedure
    170AXI Dismissal
        170AXI(B) Involuntary Dismissal
            170AXI(B)2 Grounds in General
                170Ak1751 k. Process, Defects In.
Most Cited Cases
Pro se plaintiff failed to show that he effected prop-
er service on municipal defendant, after being gran-
ted extension of time for service, warranting dis-
missal of lawsuit, where return of service listed sec-
retary as person who received service, but secretary
did not have authority to receive service on behalf
of municipal defendant. Fed.Rules Civ.Proc.Rule
4(j)(2), 28 U.S.C.A.



© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

**[4] Federal Civil Procedure 170A** 🔑 **1751**

170A Federal Civil Procedure
    170AXI Dismissal
        170AXI(B) Involuntary Dismissal
            170AXI(B)2 Grounds in General
                170Ak1751 k. Process, Defects In.
Most Cited Cases
Pro se plaintiff failed to show that he effected proper service on municipal defendant, after being granted extension of time for service, warranting dismissal of lawsuit, where return of service contained incomplete and invalid address for process server, and individual who was not authorized to accept service on behalf of municipal defendant was listed as individual served. Fed.Rules Civ.Proc.Rule 4(j)(2), 28 U.S.C.A.

**[5] Federal Civil Procedure 170A** 🔑 **1751**

170A Federal Civil Procedure
    170AXI Dismissal
        170AXI(B) Involuntary Dismissal
            170AXI(B)2 Grounds in General
                170Ak1751 k. Process, Defects In.
Most Cited Cases
Pro se plaintiff failed to show that he effected proper service upon municipal defendant, after being granted extension of time for service, warranting dismissal of lawsuit, were return of service failed to list which individual was served on behalf of municipal defendant, and plaintiff did not subsequently provide the district court with that information. Fed.Rules Civ.Proc.Rule 4(j)(2), 28 U.S.C.A.

**[6] Federal Civil Procedure 170A** 🔑 **1751**

170A Federal Civil Procedure
    170AXI Dismissal
        170AXI(B) Involuntary Dismissal
            170AXI(B)2 Grounds in General
                170Ak1751 k. Process, Defects In.
Most Cited Cases
Dismissal of lawsuit was warranted, where pro se plaintiff failed to effect proper service upon defendants, after being granted extension of time and be-

ing given explicit instructions from district court as to how to properly serve defendants, pro se plaintiff did not adequately plead subject matter jurisdiction, and claims alleged were likely barred by statute of limitations. Fed.Rules Civ.Proc.Rule 4, 28 U.S.C.A.

*MEMORANDUM OPINION AND ORDER*

ST. EVE, J.
*1 Plaintiff Gregory Miles has filed a complaint that has been referred to by this Court and by other presiding judges as "rambling," "scrambled," "sprawling," "impenetrable," and "turgid." Miles' subsequent briefs have been called "bizarre and often unintelligible." *Miles v. WTMX Radio Network,* No. 02 C 427, 2002 WL 1759802, at *2 (N.D.Ill. July 30, 2002). This judicial prose, as colorful as it is, unfortunately does not do justice to the truly eccentric nature and content of Miles' filings. The litigation, which did not even reach the discovery stage, has led to seven previously written opinions. Now, the Court dismisses Miles' action against Defendants' WTMX Radio, disc jockey Dave Fogel, Cermak Medical Center, Cook County Jail, and the Chicago Police Department for failure to effectuate proper service. Miles' inability to follow simple orders and rules, leaves this Court with no choice but to dismiss the action.

BACKGROUND

*Pro se* Plaintiff Gregory Miles originally filed a complaint against the Chicago Police Department, WTMX Radio, Dave Fogel, Boogie Night Club, Cook County Jail, and Cermak Medical Center in the Eastern District of Michigan in June 2000. *See Miles v. Chicago Police Dep't,* No. 00-CV-72782-DT, 2000 WL 1279191, at *1 (E.D.Mich. Aug.21, 2000). That court dismissed the case against all of the defendants for lack of personal jurisdiction. *Id.* The court did not address the defendants' other argument that Miles had not prop-



© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

erly served them. *Id.* The Sixth Circuit affirmed the dismissal. *Miles v. WTMX Radio,* 15 Fed.Appx. 213 (6th Cir.2001).

On January 17, 2002, Miles initiated the same lawsuit in this district. (R. 1-1, Compl.) As amended, his complaint contains various attempted allegations of defamation, assault, battery, racial discrimination, and violations of Miles' civil rights for conduct that allegedly occurred between June 22, 1999 and January 8, 2000. (R. 36-1, Supp.Am.Compl.¶¶ 15, 16.) The case, which originally was assigned to Judge Plunkett's docket, was transferred first to Judge Shadur and later to this Court.

Since initially filing his complaint in this district, Miles has been unable to execute service on any of the defendants. *Miles v. WTMX Radio Network,* No. 02 C 427, 2002 WL 1613762, at *1-2 (N.D.Ill. July 17, 2002). One defendant, Boogie Night Club, agreed to waive service so it could dispose of the case through a summary judgment motion. This Court granted that motion. *See Miles v. WTMX Radio Network,* No. 02 C 427, 2002 WL 31103471 (N.D.Ill. Sept. 18, 2002). Defendants WTMX, Dave Fogel, Cermak Medical Center, and Cook County Jail have contested service ever since they became aware of the lawsuit. The Chicago Police Department has not yet appeared in this case and there is no indication that it is even aware of this lawsuit.

This case was referred to Magistrate Judge Schenkier to sort out Miles' previous service attempts on June 7, 2002. (R. 27-1, Referral Order.) Substantially adopting a report and recommendation from Magistrate Judge Schenkier, Judge Shadur found that as of July 17, 2002, Miles had failed to properly serve any defendant.[FN1] Judge Shadur issued an order compelling Miles to adequately serve the defendants by August 9, 2002 or suffer dismissal of the action:

> FN1. Miles made a substantial misrepresentation to this Court regarding an opinion issued by Judge Shadur before the case was transferred. Miles claimed that Judge

Shadur found service on the Defendants to be proper in an August 15, 2002 order. (R. 58-1, Oct. 3, 2002 Tr. at 3:16-4:15, 8:9-8:15.) Judge Shadur did not issue an opinion or an order on August 15. Judge Shadur's only previous opinion regarding service came on July 17, 2002. It clearly spelled out the deficiencies in service and the need for Miles to properly serve the Defendants. Miles posture as a *pro se* litigant "does not excuse his compliance with this District Court's General Rules or the Federal Rules of Civil Procedure."*See Hegwood v. Shepherd,* No. 85 C 8422, 1986 WL 9193, at *2 (N.D.Ill. Aug.21, 1986) (denying plaintiff's motion because of the misrepresentations he made). Even unrepresented parties must be truthful with their submissions and arguments. Fed.R.Civ.P. 11.

**\*2** With the period specified by Rule 4(m) having elapsed without Miles having accomplished proper service on *any* defendant, this Court sees no occasion to revive the Rule 4(d) procedure for waiver of service, as magistrate Judge Schenkier has recommended. It is after all Miles' obligation to have brought defendants into this litigation by proper means, not defendants' obligation to act in the first instance. Accordingly, the Rule 4(m) time limit for service by Miles is extended to August 9, 2002, thus giving him more than ample time to accomplish service pursuant to Rule 4(c), 4(e) and 4(h). As to any defendant *not* served by that date, this action will be dismissed pursuant to Rule 4(m).
*Miles,* 2002 WL 1613762, at *2. (emphasis in original).

Miles later filed returns of service that purported to show that Cook County Jail, WTMX Radio, Cermak Medical Center, Dave Fogel, and the Chicago Police Department had been served. (*See* R. 39-1; R. 39-2; R. 39-3; R. 40-1; R. 40-2.) Cook County Jail and Cermak Medical Center moved to quash service and dismiss the Complaint on August 20,



© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

2002. WTMX Radio and Fogel filed a similar motion on September 24, 2002. (R. 54-1.) This Court finds that Miles has once again failed to properly serve the remaining defendants, and therefore dismisses the case pursuant to Judge Shadur's July 17 Order.

## ANALYSIS

Where defendants challenge the sufficiency of service, the plaintiff bears the burden of making a prima facie showing that service was proper. *Familia De Boom v. Arosa Mercantil, S.A.,* 629 F.2d 1134 (5th Cir.1980); *Chatman v. Condell Med. Ctr.,* No. 99 C 5603, 2002 WL 737051, at *2 (N.D.Ill. Apr.22, 2002) (citations omitted). In making this determination, a court may consider evidence introduced by the parties. *Id.* Even if a plaintiff cannot show that service was proper, a court "shall extend the time for service for an appropriate period" if the plaintiff shows good cause for the failure to effect proper service. Fed.R.Civ.P. 4(m); *Panaras v. Liquid Carbonic Indus. Corp.,* 94 F.3d 338, 339 (7th Cir.1996). A court may also use its discretion if no good cause is shown to allow the plaintiff additional time for service.*Henderson v. United States,* 517 U.S. 654, 662, 116 S.Ct. 1638, 1643, 134 L.Ed.2d 880 (1996).

Although a court can use its discretion to expand the time for service, it cannot excuse the requirement of service altogether. *McMasters v. United States,* 260 F.3d 814, 817 (7th Cir.2001)."Actual notice to the defendant is insufficient; the plaintiff must comply with the directives of Rule 4."*Id.*(citations omitted). Miles' *pro se* status also cannot excuse his need to comply with the procedural rules. *Id.* at 818.

[1] This Court will address the specifics of Miles' purported attempts at service of process below. As will be seen, the movants gave the Court reason to believe that service had not only been ineffective, but in some cases had not been attempted at all. Before going into that analysis, though, it is important

to stress that Miles failed to carry his prima facie burden of showing that service was proper with any defendant. This Court questioned Miles on October 3, 2002 about his returns of service, which purported to show that process servers had provided copies of the complaint and summons to the defendants. Despite repeated questions trying to solicit answers regarding the identity of these process servers, Miles could provide no details about them except that they were "individuals over 18 years of age."

**\*3 THE COURT:** Mr. Miles, who have you been using to serve the defendants?

**MILES:** You know, it was on the back of the service form.

**THE COURT:** Did you hire somebody to serve?

**MILES:** Yes, I did.

**THE COURT:** Who did you hire?

**MILES:** It was individuals over 18 years of age.

**THE COURT:** Were they friends of yours or -

**MILES:** People who I knew through the Chicago-the area.

**THE COURT:** Okay. How did you-who were they?

**MILES:** I'll have to research that information. But they were people who I met, you know, and I asked them to serve these persons-parties-for me, and they cooperated with me to get them served.

**THE COURT:** So, they were not professional process servers; is that correct?

**MILES:** No. They were all over the age of 18.

**THE COURT:** Who is Robert Carter?

**MILES:** That's one of the people who served the letter.



© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

THE COURT: And is he a friend of yours?

MILES: He's somebody who I met when I was here.

THE COURT: Okay.

MILES: It's no-no-you know, none of these people are close friends of mine. They are individuals who are above the age of 18.

THE COURT: Where did you meet him?

MILES: As far as-in the Chicago area, downtown area.

THE COURT: Did you meet him socially or when you were here on your court appearance?

MILES: When I was here at that date. The judge ordered me to reserve everybody and I re-served everybody. He gave me up until the 9th.

THE COURT: Okay. How did you find these individuals to serve.

MILES: Just looking about-needing somebody to help me get this work carried out.

THE COURT: Who is Jason Sutherland?

MILES: That's also another guy.

THE COURT: Did you pay these individuals to serve your complaint?

MILES: They were interested in-they were just trying to help me. I compensated them for going on a bus ride to carry them over here, and then we bought-I bought them lunch. But I didn't compensate them any kind of money for that service.

(R. 58-1, Oct. 3, 2002. Tr. at 2:20-3:19, 4:16-5:20.)

Miles' inability to provide any details about these individuals and the facts provided by the defendants show that either Miles was being duped or that he is attempting to dupe this Court. The returns of service that Miles filed also support this conclusion.

"William Parparu," who purportedly served both WTMX Radio and Dave Fogel, lists his street address but not his city or zip code. (R. 39-2; R. 40-1.) "Jason Sutherland," who supposedly served the complaint on Cook County Jail, claims that his address is 241 W. 73rd Street, Downers Grove, Illinois 60610. (R. 39-1.) This street address is not listed in the United States Postal Service database for Downers Grove. *See* United States Postal Service, Zip Code Lookup, Zip+4 Code, *available at* http://www.usps.com/zip4/. Further, the zip code is assigned to the City of Chicago-not to Downers Grove. *See* United States Postal Service, Zip Code Lookup, All Zip Codes for a City/Town, *available at* http://www.usps.com/zip4/ citytown.htm. These deficiencies alone raise questions about Miles' prima facie burden of establishing proper service. It is clear, though, that these deficiencies only scrape the surface of an utter failure on Miles' part to adequately serve each defendant.

I. Service Was Not Effective On Any Defendant.

A. WTMX Radio and Fogel were not Properly Served by Miles.

**\*4** "William Parparu" claims to have effectuated service on Miles's behalf by leaving the complaint and summons with Dale King at 2700 Prudential Plaza in Chicago on July 29, 2002.[FN2] WTMX Radio and Fogel argue that they were never provided with proper service.

> FN2. On October 17, 2002, Miles recanted his claim from October 3, 2002 that he observed Parpara serve the summons and complaint on King. Miles admitted that he stayed outside the Prudential Plaza while Parparu supposedly went up to the 27[th] floor to serve the Complaint.

When a plaintiff sues in federal court, he may effectuate service pursuant to the Federal Rules of Civil Procedure or the law of the state in which the court sits. *See*Fed.R.Civ.P. 4. For our purposes



© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

here, Illinois law is similar to the Federal Rules. *Compare*Fed.R.Civ.P. 4(h), *with*735 ILCS 5/2-204; *compare*Fed.R.Civ.P. 4(e), *with*735 ILCS 5/2-203. The Court will therefore only analyze service under the Federal Rules.

Federal Rule of Civil Procedure 4(h) governs service of a corporation. It allows service to be effectuated by:

delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant.

Fed.R.Civ.P. 4(h)(1). Service of process upon an individual can be accomplished by:
delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process.

Fed.R.Civ.P. 4(e)(2). WTMX Radio and Fogel dispute that King was served at all and argue that even if she was served, she did not have the authority to accept service on their behalf.

[2] Fogel and WTMX Radio provide evidence through affidavits that support their position. In one affidavit, King says that she is a receptionist with WTMX Radio, that she was never served with a complaint or summons, and that she does not have authority to accept service on behalf of WTMX Radio or Fogel. (R. 54-1, WTMX Radio and Fogel Mot. to Dismiss Am. Compl. and Quash Service, Ex. C ¶¶ 2-6 .) In another affidavit, Fogel said that he never authorized anyone to receive service on his behalf and that the complaint and summons were never left with anyone at this house or abode.

(*Id.,* Ex. E ¶¶ 3-5.) Finally, WTMX Radio's station manager Barry James affirms that King does not have authority to receive service on WTMX Radio's behalf and states that no authorized agent or officer ever was served with the complaint and summons. (*Id.,* Ex. D ¶¶ 2-5.) Miles does not respond with any evidence disputing these assertions. This Court finds that Miles has failed to show that he served King at all, let alone that she was a proper representative of WTMX Radio or Fogel. Service was not effective on either of these defendants. Accordingly, pursuant to Judge Shadur's July 17, 2002 Order, WTMX Radio and Fogel are dismissed from this action.

**B. Cermak Medical Center and Cook County Jail were not Properly Served by Miles.**

**\*5** [3] Under the Federal Rules of Civil Procedure, "[s]ervice upon a state, municipal corporation, or other governmental organization subject to suit, shall be effected by delivering a copy of summons and of the complaint to its chief executive officer or by serving the summons and complaint in the manner prescribed by the law of that state for the service of summons or other like process upon any such defendant."Fed.R.Civ.P. 4(j)(2). Under Illinois law, service upon a governmental entity may be effectuated by leaving a copy "with the president or clerk or other officer corresponding thereto."735 ILCS 5/2-211. In his June 20, 2002 Report and Recommendation, Magistrate Judge Schenkier explicitly informed Miles of these obligations for service. *Miles v. WTMX Radio Network,* No. 02 C 427, 2002 WL 1359398, at \*2-7 (N.D.Ill. June 20, 2002). Judge Shadur later adopted those findings. *Miles,* 2002 WL 1613762 at \*2. Miles has ignored both these judges and failed to properly serve Cermak Medical Center, Cook County Jail, or the Chicago Police Department.

1. Miles' purported service on Cermak Medical Center was not effective.



"Robert Carter" claims to have served Cermak Medical Center July 29, 2002 by providing a copy of the summons and complaint to Janice Demitro at 2800 South California in Chicago. Demitro's title is listed on the return of service as "secretary." (R. 39-3.) As a secretary, she was not a proper representative to receive service on behalf of Cermak Medical Center. Miles has not met his prima facie burden of showing effective service on this defendant. Accordingly, pursuant to Judge Shadur's July 17, 2002 Order, Cermak Medical Center is dismissed from this action.

### 2. Miles' purported service on Cook County Jail was not effective.

[4] "Jason Sutherland" supposedly served Cook County Jail by providing a copy of the complaint and summons to "V Roberts" at 2700 S. California in Chicago on July 29, 2002. Mr. Sutherland lists his address as 241 W. 73rd Street in Downers Grove, Illinois 60610. As indicated previously, this is an invalid address and zip code for Downers Grove. Such invalidity clouds the alleged service.

Even if the service took place as represented in the return of service, however, there is no indication that "V Roberts" is a proper person to receive service on behalf of Cook County Jail. Miles has not met his prima facie burden of showing effective service on this defendant. Accordingly, pursuant to Judge Shadur's July 17, 2002 Order, Cook County Jail is dismissed from this action.

### 3. Miles purported service on the Chicago Police Department was not effective

[5] The return of service for the Chicago Police Department does not list what individual was provided with a copy of the summons and complaint. (R. 40-2.) It is not addressed to anyone in particular. (Id.) Miles has not subsequently provided this Court with that information. Without evidence that the complaint and summons were served on a CEO, president, officer, or clerk of the Chicago Police

Department, Miles has not met his prima facie burden of showing effective service on this defendant. Accordingly, pursuant to Judge Shadur's July 17, 2002 Order, the Chicago Police Department is dismissed from this action.

### II. There Is No Good Cause Supporting An Allowance of More Time for Service.

*6 [6]"[A] plaintiff's attempts at service need to be '[a]t the very least ... accompanied by some showing of reasonable diligence' before good cause must be found."*Bachenski v. Malnati,* 11 F.3d 1371, 1377 (7th Cir.1993) (quoting *Tso v. Delaney,* 969 F.2d 373, 377 (7th Cir.1992)). Miles has already been given leave to attempt service past the 120 day period allowed by the Federal Rules of Civil Procedure. Despite the efforts to give this *pro se* plaintiff every benefit of the doubt, Miles has not shown that he can follow simple instructions and rules. Neither this Court nor Judge Shadur has been able to effectively communicate with Miles. *See Miles,* 2002 WL 1759802, at *1. Judge Shadur has warned Miles that his complaint is laden with deficiencies that made pursuit of the claim borderline frivolous. *Id.* at *2. The significant problems with the complaint, together with Miles' continuing failure to effect proper service despite explicit instructions from Judge Shadur and Magistrate Judge Schenkier counsel against allowing futher time to effect service.

Specifically, Miles has not adequately pled that this Court has subject matter jurisdiction, despite multiple warnings from Judge Shadur. *Id.* at *1 (The complaint "speaks of diversity of citizenship in mistaken terms ... [and] Miles' allegations do not identify the states of citizenship of all of the parties."); *Miles v. WTMX Radio Network,* No. 02 C 427, 2002 WL 1379123, at *1 (Miles "allegations in his Complaint ... fail to establish such diversity as is required by 28 U.S.C. § 1332."). The requirement that a plaintiff prove that a Court has subject matter jurisdiction is "inflexible and without exception." *Cook v. Winfrey,* 141 F.3d 322, 325 (7th



© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Cir.1998).

Further, the statute of limitations, which the defendants would undoubtedly raise if this case were to proceed any further, would bar these claims. As Judge Shadur warned, "all of those [date] references confirm that Miles' entire federal lawsuit is subject to dismissal on grounds of untimeliness. *Miles,* 2002 WL 1759802, at *1. When Miles filed his lawsuit on January 17, 2002, "more than two years had elapsed since the *latest* of those dates. And that means that not one of Miles' specified claims would survive the bar of the applicable statute of limitations." *Id.* at *2.

Moreover, Miles has ignored warnings that he has named as defendants entities that cannot be sued such as the Chicago Police Department, Cook County Jail, and perhaps Cermak Medical Center. *See Miles,* 2002 WL 1613762, at *1-2;*Miles,* 2002 WL 1379123, at *1. Despite all of these admonitions, Miles has failed to amend his complaint in any meaningful way. Judge Shadur already cautioned Miles that, "Under the circumstances ... this Court would have to consider the active pursuit of his present claims as 'frivolous' ... and hence as potentially sanctionable." *Miles,* 2002 WL 1759802, at *2. This Court fully agrees with Judge Shadur's assessment of Miles' complaint and therefore finds that there is no good reason to further extend the time for the plaintiff to effectuate service.

## CONCLUSION

*7 "At some point, our solicitous treatment of *pro se* litigants must be trumped by our concern with the rights of Defendants to be free of scandalous, repetitive, and baseless claims that undoubtedly drain their financial and emotional resources." *Sato v. Kwansny,* No. 93 C 0037, 1993 WL 498339, at *10 (N.D.Ill. Nov.5, 1993). Miles has been afforded many opportunities and second-chances that would not have been available to a represented party. His failure to follow simple rules and instructions in attempting to serve the defendants, along with his

multiple misrepresentations give this Court no option but to dismiss his claims with prejudice. The defendants' motions to dismiss the complaint and quash service are granted. All other pending motions are dismissed as moot.

N.D.Ill.,2002.
Miles v. WTMX Radio Network
Not Reported in F.Supp.2d, 2002 WL 31369424 (N.D.Ill.)

END OF DOCUMENT



© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                                                  Page 1
Not Reported in F.Supp.2d, 2004 WL 3119015 (N.D.Ill.)

**H**

Bell v. City of Chicago
N.D.Ill.,2004.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois, Eastern
Division.
Terry BELL Plaintiff,
v.
CITY OF CHICAGO, Fred Woods, and Donald Be-
ster Defendant.
**No. 03 C 2117.**

Dec. 20, 2004.

*MEMORANDUM OPINION AND ORDER*

COAR, J.
**\*1** [Other docket entry] For the reasons discussed
in the memorandum opinion and order attached
hereto, Defendant Woods' Motion to Dismiss [Doc.
No. 32] is GRANTED.

Before this Court is Defendant Fred Woods' motion
to dismiss for improper service of process. For the
reasons set forth below, this motion is granted.

I. Facts

Plaintiff Terry Bell filed her pro se complaint in
this matter on March 25, 2003, naming only the
City of Chicago and the City of Chicago Depart-
ment of Health as defendants. She included factual
allegations against individual defendants Fred
Woods and Donald Bester in her complaint. She
then filed an amended complaint against the same
defendants through counsel on April 25, 2003. On
August 12, 2003, Bell filed a second amended com-
plaint with a new attorney, who continues to repres-
ent her at present; this second amended complaint
named Woods and Bester as individual defendants
and alleged two additional counts against them: a
42 U.S.C. § 1983 count and a slander per se count.

An alias summons was issued for Defendant Woods
on March 25, 2004, seven months after Plaintiff
filed her second amended complaint. An affidavit
of service was filed with this Court on June 22,
2004, stating that service was executed on April 13,
2004. Defendant Woods denies that valid service
was executed. According to Woods, in mid-April, a
guest at his home answered the door intercom and
was asked if that was the Woods residence. When
the guest answered in the affirmative, the person at
the door stated that there was a package for Fred
Woods. The next morning, Woods opened the pack-
age, which contained the complaint and summons.
Woods states he was never served in person.

Defendant Woods has been a City employee for ap-
proximately twenty-five years. He has lived at his
current address for approximately five years.

II. Analysis

Federal Rules of Civil Procedure 4 outlines the re-
quirements for valid service of process.
Fed.R.Civ.P. 4. A plaintiff has 120 days after filing
his or her complaint to serve a defendant. If
plaintiff does not serve a defendant within 120
days, Rule 4(m) states "the court, upon motion or
on its own initiative after notice to the plaintiff,
shall dismiss the action without prejudice as to that
defendant or direct that service be effected within a
specified time."Fed.R.Civ.P. 4(m) (2000). A
plaintiff who misses the 120 day deadline has two
options: she can show good cause for missing the
deadline, which must include a showing of at least
"reasonable diligence"; or the court can grant a dis-
cretionary extension of time for service.

The burden is on the plaintiff to show good cause.
4B Wright & Miller, Fed. Prac. & Proc.: Civil 3d §
1137 (2002). Good cause is likely, though not re-
quired, to be found when there is evidence that a
third party's conduct prevented plaintiff from ef-
fecting timely service. Evidence of defendant's in-



© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

tentional evasion of service, faulty effort by the process server, and lack of prejudice to defendant by the delay are all factors that a court can consider in making a good cause determination. *Id.;Geiger v. Allen,* 850 F.2d 330 (7th Cir.1988); *United States v. Fields,* 703 F.Supp. 749 (N.D.Ill.1989). A good cause showing must be accompanied by evidence that plaintiff used "reasonable diligence" in attempting to serve defendant within 120 days. *Bachenski v. Malnati,* 11 F.3d 1371, 1377 (7th Cir.1993).

**\*2** In this case, Defendant Woods argues that there is no evidence to support a good cause finding or any indication of reasonable diligence by Plaintiff in attempting to serve him within the 120 day period. Defendant Wood argues that he did not attempt to evade service. He has been employed by the City of Chicago for approximately twenty-five years, and has lived at his current address for approximately five years. There is no evidence to indicate Plaintiff attempted to serve Defendant Woods prior to March 2004, but even if there were, neither attorney neglect nor inadvertent failure to serve establish good cause. *Floyd v. U.S.,* 900 F.2d 1045-1045-48 (7th Cir.1990); *Geiger,* 850 F .2d at 333.

Plaintiff made no discernible effort at all to serve Defendant Woods until approximately 210 days after filing her second amended complaint. Plaintiff argues that her counsel orally asked Defendant City's counsel for Defendant Wood's address but was told that counsel did not know Woods' address; that she had a discovery request for Defendant Woods' address pending; that Defendant Woods delayed excessively in filing his motion to dismiss; that Defendant Woods had notice because he was "the main character in Plaintiff's lawsuit against the City of Chicago"; and that the process server believed, based on his notarized return of service form, he had effected personal service. In support of her efforts to establish good cause, Plaintiff cites *Mid-Continent Wood Products, Inc. v. Harris,* 936 F.2d 297 (7th Cir.1991). She describes this case as

"review[ing]" a three-part good cause test that would permit this Court, so Plaintiff contends, to find Plaintiff had good cause for the four-month delay in service. What Plaintiff fails to disclose is that the Seventh Circuit struck down the good cause test. In fact, the Seventh Circuit could not have been plainer, stating that "the facts considered by the district court have questionable validity, and, as a result, the district court's three-part test *must fail." Id.* at 300 (emphasis added).

It is Plaintiff's responsibility to ensure that all defendants are served within 120 days of filing her complaint. The fact that counsel for one defendant did not know the address of another Defendant is irrelevant. A Plaintiff may not rely on one defendant giving another defendant notice of pending litigation, even when the defendants have a business relationship.*Mid-Continent,* 936 F.2d at 301 ("We ... hold that actual knowledge of the existence of a lawsuit is insufficient to confer personal jurisdiction over a defendant in the absence of valid service of process.") The only reason Plaintiff provides which might support a good cause finding is that her process server provided a notarized return of service form, which indicated that in person service had been effected. However, because service was not even *attempted* until four months after the 120 day period ended, this Court finds Plaintiff has not made a showing of reasonable diligence in its efforts to serve Defendant Woods. Therefore, there is no support for a determination of good cause.

**\*3** The Court may, in its discretion, grant an extension of time for service. Fed.R.Civ.P. 4(m) (2000). However, this Court notes that Plaintiff has never requested an extension, has not demonstrated any reason why service could not have been effected within the original 120 day period, and has not demonstrated even basic efforts to comply with the federal procedural rule. For these reasons, this Court will not grant an extension.

Conclusion



© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

For the foregoing reasons, Plaintiff failed properly serve Defendant Woods and all claims against him will be dismissed. Defendant Wood's motion to dismiss is granted.

N.D.Ill.,2004.
Bell v. City of Chicago
Not Reported in F.Supp.2d, 2004 WL 3119015 (N.D.Ill.)

END OF DOCUMENT



© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2005 WL 1950392 (N.D.Ill.)

**H**

Mullen v. Metra Corp.

N.D.Ill.,2005.

Only the Westlaw citation is currently available.

United States District Court,N.D. Illinois, Eastern
Division.

Phyllis A. MULLEN, Plaintiff,

v.

METRA CORPORATION, d/b/a Northern Illinois
Railroad Corporation, an Illinois Corporation, and
Sue Ann Rosen, Individually, and as an Employee
of Metra, Defendants.

**No. 05 C 1717.**

Aug. 11, 2005.

Phyllis A. Mullen, Chicago, IL, for Plaintiff.

Constance Valkan, Richard Capra, NIRC/Metra,
Chicago, IL, for Defendants.

*MEMORANDUM OPINION*

DERYEGHIAYAN, J.

**\*1** This matter is before the court on Defendant
Metra Corporation's ("Metra") motion to dismiss
and on Defendant Sue Ann Rosen's ("Rosen") mo-
tion to quash service of summons. For the reasons
stated below, we grant in part and deny in part
Metra's motion to dismiss. In addition, we grant
Rosen's motion to quash service of summons.

**BACKGROUND**

Plaintiff Phyllis A. Mullen ("Mullen") began work-
ing for Metra in March of 2004 as a paralegal. Mul-
len alleges that "at the latest" she complained to the
general counsel at Metra about alleged racial dis-
crimination in May of 2004. (A.Compl.Par. 15).
According to Mullen, Defendant Sue Ann Rosen
("Rosen"), who was Mullen's supervisor, was dis-
courteous to Mullen, made false or malicious state-
ments about Mullen, and used threatening, intimid-
ating, or abusive language in violation of work

place rules. Mullen further alleges that Rosen re-
fused to accept the organization system proposed
by Mullen and made a vulgar statement towards
Mullen. Mullen also claims that she was blamed for
pre-existing problems in her department. According
to Mullen, her department was in "chaos and disar-
ray" and she was one of only two paralegals forced
to handle enormous amounts of work. (A Compl.
Par. 17-18). On May 19, 2004, Mullen filed an in-
ternal complaint with the Metra EEO Department
regarding her work conditions. Mullen claims that
after she filed the complaint, she was told to pick
up a written form from the EEO office and that
while she was waiting in the EEO office to get the
form she "was confronted by Rosen and the HR De-
partment Head (Washington) who presented
[Rosen] with a termination memo."(A Compl. Par.
20). Mullen claims that either Mullen or Washing-
ton then handed Mullen the EEO form that she had
been waiting for and told Mullen that the form was
the form that Mullen had been waiting for in order
to complain, stating something to the effect of "[b]y
the way, here is the form that you came to pick
up."(A.Compl.20).

Mullen alleges that after her termination she contin-
ued to pursue her EEO complaint. Mullen asserts
that, after her termination, Rosen made false and
misleading statements about Mullen. Specifically,
Mullen asserts that Rosen and Metra have sought to
"convince third parties, investigators and the legal
community at large of [Mullen's] lack of compet-
ency."(A Compl. Par. 24). Mullen alleges that
Metra's false statements convey a false image to the
legal community that Mullen lacks the competency
to perform the job duties of a litigation paralegal.
(A Compl. Par. 32). Mullen also claims that after
her termination at Metra, she had a "business affili-
ation" with the Law Offices of L.N. Vance and As-
sociates ("Vance"). (A Compl. Par. 30). According
to Mullen, Rosen singled out Vance for harassment
because of Mullen's connections with Vance. Mul-
len claims that Rosen "made rude phone calls" to



© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

an attorney at Vance and became a nuisance to the attorney to such an extent that it interfered with Mullen's "business affiliation" with the firm. (A Compl. Par. 30)). Mullen's amended complaint includes a claim alleging retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e*et seq.* (Count I), a tortious interference with prospective economic advantage claim ("TIPEA") (Count II), a slander claim (Count III), an injurious falsehood claim (Count III), and a libel claim (Count III).

## LEGAL STANDARD

*\*2* In ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Thompson v. Illinois Dep't of Prof'l Regulation,* 300 F.3d 750, 753 (7th Cir.2002); *Perkins v. Silverstein,* 939 F.2d 463, 466 (7th Cir.1991). The allegations of a complaint should not be dismissed for a failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *See also Baker v. Kingsley,* 387 F.3d 649, 664 (7th Cir.2004)(stating that although the "plaintiffs' allegations provide[d] little detail ... [the court could not] say at [that] early stage in the litigation that plaintiffs [could] prove no set of facts in support of their claim that would entitle them to relief."). Nonetheless, in order to withstand a motion to dismiss, a complaint must allege the "operative facts" upon which each claim is based. *Kyle v. Morton High School,* 144 F.3d 448, 454-55 (7th Cir.1998); *Lucien v. Preiner,* 967 F.2d 1166, 1168 (7th Cir.1992). Under the current notice pleading standard in federal courts a plaintiff need not "plead facts that, if true, establish each element of a "cause of action...." ' *See Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.,* 40 F.3d 247, 251 (7th

Cir.1994)(stating that a "[a]t this stage the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint" and that "[m]atching facts against legal elements comes later."). The plaintiff need not allege all of the facts involved in the claim and can plead conclusions. *Higgs v. Carter,* 286 F.3d 437, 439 (7th Cir.2002); *Kyle,* 144 F.3d at 455. However, any conclusions pled must "provide the defendant with at least minimal notice of the claim," *Id.,* and the plaintiff cannot satisfy federal pleading requirements merely "by attaching bare legal conclusions to narrated facts which fail to outline the bases of [his] claims." *Perkins,* 939 F.2d at 466-67. The Seventh Circuit has explained that "[o]ne pleads a 'claim for relief' by briefly describing the events." *Sanjuan,* 40 F.3d at 251.

## DISCUSSION

### I. Libel and Slander Claims (Count III)

Metra argues that it is entitled to a dismissal of the libel and slander claims because Metra is protected from civil lawsuits based on its status as a local public entity under the Local Governmental and Governmental Tort Immunity Act ("Illinois Tort Immunity Act").745 ILCS 10/1-10*et seq.* Section 107 of the Illinois Tort Immunity Act provides that, "[a] local public entity is not liable for injury caused by any action of its employees that is libelous or slanderous...." 745 ILCS 10/2-107. The Illinois Tort Immunity Act "includes within the definition local public entity not-for-profit corporations like Metra organized for the purpose of conducting public business." *Smith v. Northeast Ill. Reg'l Commuter R.R. Corp.,* 210 Ill.App.3d 223, 155 Ill.Dec. 41, 569 N.E.2d 41, 43 (Ill.App.Ct.1991);, 745 ILCS 10/1-206; *See also Bryant v. Northeast Ill. Reg'l Commuter R.R. Corp. (d/b/a Metra),* 809 F.Supp. 584, 590 n. 5 (N.D.Ill.1992) (stating that "Metra is a governmental entity, a public corporation and a unit of local government as defined under the Regional Trans-



© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

**\*3** In the instant action, Mullen does not contest that Metra is a local public entity. Rather, Mullen asserts that the Illinois Tort Immunity Act does not protect local public entities from actions grounded in federal law. This argument however, is of no avail, since Metra is seeking a dismissal of the libel and slander claims pursuant to the Illinois Tort Immunity Act, which are not federally based claims. Mullen also argues that Metra is liable for libel and slander apparently pointing to 740 ILCS 145/3 ("Section 145/3").Section 145/3 provides that "[i]n actions for slander or libel, an unproved allegation of the truth of the matter charged shall not be deemed proof of malice, unless the jury, on the whole case, find that such defense was made with malicious intent ... [a]nd it shall be competent for the defendant to establish the truth of the matter charged by a preponderance of testimony."740 ILCS 145/3. Section 145/3 does not provide that a public entity such as Metra can be held liable for slander or libel. Also, Section 145/3 deals with matters regarding the "truth of the matter charged" and with "proof of malice," neither of which is pertinent in evaluating whether Metra is protected by the Illinois Tort Immunity Act. 740 ILCS 145/3. Therefore, we grant Metra's motion to dismiss the libel and slander claims.

*II. Injurious Falsehood Claim (Count III)*

Metra seeks a dismissal of the injurious falsehood claim. Illinois courts have declined to recognize the tort of injurious falsehood. *Mader v. Motorola,* 1998 WL 164880, at \*7 (N.D.Ill.1998); *Suhadolnik v. City of Springfield,* 184 Ill.App.3d 155, 133 Ill.Dec. 29, 540 N.E.2d 895, 913 (Ill.App.Ct.1989). Mullen has not shown that the Illinois courts would now recognize such a claim and in fact Mullen has provided no response at all to Metra's arguments regarding the injurious falsehood claim. Therefore, we grant Metra's motion to dismiss the injurious falsehood claim.

*III. Tortious Interference with Prospective Economic Advantage Claim (Count II)*

Metra argues that the court should dismiss Mullen's TIPEA claim. Metra first argues that Mullen has "fail[ed] to meet the elements of a cause of action for interference with prospective economic advantage."(Mot.5). In support of such a proposition, Metra cites an Illinois state court case. However, such case law applies the state pleading standard and does not apply the notice pleading standard utilized in the federal courts. The Seventh Circuit has made it clear that, under the notice pleading standard, a plaintiff is not required to plead facts that match up with each element of the claim. *See Head v. Chicago School Reform Bd. of Trustees,* 225 F.3d 794, 801 (7th Cir.2000)(stating that the plaintiff was not required under the notice pleading standard to "plead [ ] sufficient facts to establish the legal elements of his claim."); *Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.,* 40 F.3d 247, 251 (7th Cir.1994)(stating that "[a]t this stage the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint" and that "[m]atching facts against legal elements comes later."). Rather, the proper focus under the notice pleading standard should be on whether "it appears beyond doubt that the plaintiff can prove no set of facts in support of h[er] claim which would entitle h[er] to relief."*Conley,* 355 U.S. at 45-46.

**\*4** Metra thus improperly asks the court to require Mullen to plead facts that show elements of her TIPEA claim such as that she had a reasonable expectation of entering into a valid business relationship with a third party. Regardless, Mullen has alleged sufficient facts to address that element of her claim. Specifically, Mullen has alleged that she had a "business affiliation" with the law firm of Law Offices of L.N. Vance and Associates ("Vance"). (A.Compl.30). In addition, Mullen has alleged that Rosen singled out Vance because of Mullen's business affiliation with it and that Rosen harassed an attorney at the firm causing "interference" with



Mullen's business affiliation. (A.Compl.Par. 30). Such allegations are sufficient, particularly taking into consideration that Mullen is proceeding *pro se.* See *McCormick v. City of Chicago,* 230 F.3d 319, 325 (7th Cir.2000)(stating that *"pro se* complaints are to be liberally construed and not held to the stringent standards expected of pleadings drafted by lawyers."). Viewing the allegations in a light most favorable to Mullen, and making inferences in her favor, Mullen alleges that she did have a reasonable expectation of entering into a valid business relationship with the law firm. Therefore, we deny Metra's motion to dismiss the TIPEA claim.

We emphasize that we are not making any findings as to the truth of Mullen's allegations or the strength of the evidence in this regard. At this stage of the proceedings, we are required to accept as true Mullen's allegations.*Thompson,* 300 F.3d at 753. At the dispositive motion stage, Mullen will need to offer more than allegations to maintain her TIPEA claim and will need to point to sufficient evidence to support her allegations in order to defeat a dispositive motion, if one is filed by Metra.

*IV. Coherence of Complaint*

Metra seeks a dismissal of all claims in this action based upon Federal Rule of Civil Procedure 8 ("Rule 8").Rule 8 states in part that a complaint should contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and that "[e]ach averment of a pleading shall be simple, concise, and direct."Fed.R.Civ.P. 8(a)(2) & 8(e)(1). Metra argues that the amended complaint does not comply with Rule 8 because the amended complaint "is replete with duplicative superfluous, and irrelevant information."(Mot.10). However, as is explained above, in addition to Rule 8, the Seventh Circuit has provided case law defining the notice pleading standard. As the Seventh Circuit has explained, the true test for a complaint is whether the complaint "provide[s] the defendant with at least minimal notice of the claim ."*Kyle,* 144 F.3d at 455. In order to obtain a dismissal, a defendant

must do much more than simply point to Rule 8 and to a duplicative fact in the complaint or to a fact that the defendant considers irrelevant. Metra demands "clarity and brevity" in the complaint. (Mot.10). Certainly, there can be instances when the complaint is so incoherent or so elongated that the complaint is not coherent and a defendant is not provided with sufficient notice of the claims brought against it. Metra cites, for instance, *Vicom v. Harbridge Merchant Servs., Inc.,* 20 F.3d 771 (7th Cir.1994), in which the plaintiff's amended complaint was 119 pages, containing 385 paragraphs, and considered "less-than-coherent." *Id.* at 775.Metra also cites *Harman v. Gist,* 2003 WL 22053591 (N.D.Ill.2003) in which the plaintiff's complaint referenced 200 pages of exhibits. *Id.* at *5. However, unlike the complaints discussed in *Vicom* or *Harman,* Mullen's complaint, while lengthy, is not overly complex or confusing. The complaint itself is only 14 pages long, while containing approximately 45 pages of exhibits. Moreover, Mullen does reference lengthy exhibits and it is feasible to clearly identify certain causes of action from her complaint. Mullen has provided sufficient clarity and brevity in her allegations to give Metra notice of the claims brought against it.

*5 While "clarity and brevity" in a complaint is preferable, there is nothing that necessarily requires a complaint to be well organized or well written and nothing in Rule 8 allows a court to engage in a critique of the writing skills of the drafter of the complaint and dismiss an action if the complaint is not up to par. Metra's arguments in regards to the brevity and clarity of the complaint are particularly flawed because Metra does not even acknowledge that Mullen is proceeding *pro se.*A *pro se* complaint cannot be held to the same stringent standard as that which is applied to the pleadings of a licensed practitioner. See *McCormick,* 230 F.3d at 325 (stating that *"pro se* complaints are to be liberally construed and not held to the stringent standards expected of pleadings drafted by lawyers."). Thus, it is not reasonable for Metra to demand that the complaint be void of all irrelevant facts when



the complaint was prepared by a layperson who may or may not have sufficient knowledge of the law to plead only the relevant facts. Clearly, the Seventh Circuit has not imposed such a burden on *pro se* litigants. *See e.g. id.*

As is explained above, Mullen has provided sufficient allegations to delineate the bases for her TIPEA claim. Mullen has also provided sufficient allegations for her Title VII retaliation claim. Mullen alleged that she was being discriminated against because of her race to the EEO Office at Metra. (A.Compl.Par. 4). Mullen alleges that her working conditions worsened and she decided to file an internal complaint with the EEO Office on May 19, 2004. (A.Compl.Par. 19). Mullen states that she went to pick up a form for the complaint from the EEO office and was told to wait in a conference room. (A.Compl.Par. 20). Mullen alleges that Rosen, who was responsible for the alleged discrimination, then came in the conference room. Mullen alleges that either Rosen or Washington told Mullen that she was fired, handed Mullen the EEO form and told Mullen that the form was the form that Mullen was waiting for in order to complain. (A.Compl. Par. 20). Such allegations are sufficient to state a Title VII retaliation claim. Again, we emphasize that we are not making any findings regarding the truth of Mullen's allegations. We are merely finding that she has provided sufficient allegations to state a claim. Therefore, we deny Metra's motion to dismiss all claims based upon Rule 8.

*V. Motion to Quash Summons*

Rosen moves to quash service of summons in the instant action. Federal Rule of Civil Procedure 4(e) ("Rule 4(e)") provides the following:

[S]ervice upon an individual from whom a waiver has not been obtained and filed, other than an infant or an incompetent person, may be effected in any judicial district of the United States ... pursuant to the law of the state in which the district court is loc-

ated, or in which service is effected, for the service of a summons upon the defendant in an action brought in the courts of general jurisdiction of the State; or ... by delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process.

*6 Fed.R.Civ.P. 4(e). Under Illinois law, service of a summons upon an individual is to be made either by "leaving a copy thereof with the defendant personally" or by delivering a copy to a suitable person "at the defendant's usual place of abode...." 735 ILCS 5/2-203(a)(1)-(2). In considering the sufficiency of service of process, a defendant may introduce affidavits to support its contention that service was improper. *See Jones v. Jones,* 217 F.2d 239, 242 (7th Cir.1954) (considering affidavits submitted by both parties in deciding whether service was proper); *Grantham v. Challenge-Cook Bros., Inc.,* 420 F.2d 1182, 1186 (7th Cir.1969) (considering affidavit submitted to support defendant's motion to quash service).

In the instant action, Rosen argues that the summons addressed to Rosen, along with a copy of the complaint, was dropped off with Metra's receptionist, Carmen Kenniel ("Kenniel") at the front desk of Metra's Law Department, 547 West Jackson Boulevard. Rosen argues that the building located at 547 West Jackson Boulevard is an office building and Metra's headquarters. Rosen asserts that she does not reside at this location and that it is not her usual place of abode. An affidavit by Kenniel reiterates this notion. Thus, Rosen argues that she was not properly served according to Federal Rule of Civil Procedure 4(e) and that the service of summons should be quashed.

Mullen claims that, although service of process was not at Rosen's usual place of abode or handed to her personally, Rosen was present at the time of service



and was aware at all times of the service of process upon her. However, Mullen's assertion that Rosen was present at the time of service directly contradicts the affidavit of Kenniel, which states that Kenniel signed for the summons and that Rosen was not present at the time the summons was dropped off. Moreover, Mullen's own documentary evidence affirms that Kenniel signed for the summons, but does not show that Rosen was present or signed the document. Thus, Mullen has not shown that Rosen has been properly served in this action and we grant Rosen's motion to quash service of summons. We note that we are not by this ruling barring Mullen from seeking an extension of time to execute proper service upon Rosen.

## CONCLUSION

Based on the foregoing analysis, we grant the motion to dismiss the slander claim (Count III), the libel claims (Count III), and the injurious falsehood claim (Count III). We deny the motion to dismiss the TIPEA claim (Count II) and the Title VII retaliation claim (Count I). We grant Rosen's motion to quash service of summons.

N.D.Ill.,2005.
Mullen v. Metra Corp.
Not Reported in F.Supp.2d, 2005 WL 1950392 (N.D.Ill.)

END OF DOCUMENT



© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.